HARRIS, Presiding Judge.
The only issue presented on this appeal is whether appellant was denied his constitutional right to a speedy trial. We start with the statement that the resolution of this issue must be based on the facts contained in the record and the facts, as alleged, leave much to be desired as we consider appellant’s contentions.
At approximately nine o’clock on the night of December 1, 1973, a lone bandit entered the Summerville Road Supermarket, Inc., doing business as Piggly Wiggly Number 11, located at 3808 Summerville Road, Phenix City, Alabama, and robbed the owner of around $1,384.87. The owner, William E. Powers, testified that, at the *DCCVI time the bandit entered the store, he was engaged in bagging groceries and his wife was at the cash register. The man walked to the cash register and pulled an automatic pistol and demanded all the money. Mrs. Powers looked at her husband and he told her to give him the money. After Mrs. Powers gave the robber the money he turned and pointed the pistol at Mr. Powers and demanded the money from the safe. Mr. Powers got the money from the safe and gave it to the robber. The robber then ordered both Mr. and Mrs. Powers into a back room and left the store. Mr. Powers made a positive in-court identification of appellant as the man who robbed them at gunpoint on December 1, 1973.
Mr. John D. Farmer testified that he is a special agent with the U.S. Treasury Department in Jacksonville, Florida. In October 1974 he was a Detective with the Jacksonville Sheriff’s Department assigned to the narcotics section. In the course of his employment he came in contact with appellant in a motel on the south side of Jacksonville at about 8:00 a. m. on the fifth day of October, 1974, at which time appellant was arrested. At the time of his arrest he was given the Miranda rights and warnings and signed a waiver of rights form which was witnessed by several officers of the Sheriff’s Department including Officer Farmer. He told Officer Farmer that he understood his rights and that he voluntarily signed the waiver of rights form. Officer Farmer identified State’s Exhibit 9 as the waiver form and it was introduced into evidence without objection.
Officer Farmer identified State’s Exhibit 10 as a signed statement made by appellant concerning the robbery in Phenix City, Alabama. The proper predicate was laid showing that no force or threats were used to induce appellant to make a statement, and that no promises of any kind or other inducements were held out to him to persuade him to sign the confessory statement. Appellant’s attorney voiced no objections to this statement being read to the jury. The statement follows:
“Name: Charles Ray Slaughter; address and telephone number are blank; age, 25; occupation is blank; statement made at Jacksonville, Florida, Sheriff’s Office, Vice Squad Office; hour, 1:25 p. m.; date, October 5, ’74. That portion was filled in by me. The following portion is a body of the statement which was written by Mr. Slaughter. T robbed Piggly Wiggly around December 1st at night riding a bicycle. The gun was not loaded. It was before closing of the store. Phe-nix City, Alabama.’
“I am making this statement of my own free will. Signed C. R. Slaughter.”
Officer Farmer further testified that at the time Slaughter was arrested the arresting officer (Prescott) seized two weapons, one being a revolver and one being a 380 caliber Llamma. Slaughter stated the Llamma weapon was the one he used to rob the Piggly Wiggly in Phenix City. Officer Farmer identified the Llamma as an automatic and it was introduced into evidence without objection. Appellant’s counsel did not question this witness.
Appellant’s counsel did not ask Mr. Powers any questions nor did he offer any evidence in his behalf as to the robbery. On recommendation of the State the trial judge sentenced appellant to ten years imprisonment in the penitentiary.
Appellant was to begin serving this sentence at the expiration of the sentence he was then serving in the State of Florida.
With this background we turn to appellant’s claim that he was denied his constitutional right to a speedy trial.
While appellant was serving two concurrent twenty-five year sentences for robbery in the State of Florida he filed a pro se motion in the Circuit Court of Russell County, Alabama, seeking the dismissal of a warrant and detainer which had been lodged against him by Alabama authorities. This motion was filed in the office of the Clerk of the Circuit Court of Russell County on March 13,1978. In his motion he alleges that during the month of October 1974 when he was arrested in Jacksonville, Florida, he was informed that he was wanted for *DCCVII armed robbery in Russell County, Alabama, and that he signed and executed a waiver and consent to extradition to return it to Alabama to face such charge. He further alleged that while serving the sentences imposed on him in Florida he was informed that a warrant date April 3, 1975, had been issued out of Russell County, Alabama, charging him with armed robbery. The motion to dismiss contains the following allegation:
“That since October, 1974, when he signed a waiver and consent to extraditions as aforesaid, and since April 3,1975, when a warrant was issued as aforesaid, the defendant has been continuously available for trial and amenable to justice
“CHARLES RAY SLAUGHTER, ) Plaintiff )
) )
vs. )
)
STATE OF ALABAMA, )
Defendant )
ORDER ON MOTION TO QUASH AND DISMISS WARRANT AND DETAINER
“Now comes the plaintiff herein and files his petition seeking dismissal of any criminal charges pending against him in Russell County, Alabama, and the Court having considered the same finds that the request herein presented is the first such request made by the plaintiff since charges were placed against him. It is the further opinion of the Court that the State of Alabama should be given the opportunity to seek for the physical return of the plaintiff herein to the jurisdiction of the Circuit Court of Russell County, Alabama prior to any ruling upon his motion. It is, therefore,
“ORDERED AND ADJUDGED by the Court that a copy of the petition, together with a copy of this Order, should be delivered to the District Attorney for the 26th Judicial Circuit of Alabama for such action as he may deem to be appropriate or proper. herein, yet no effort has been made to return him to the jurisdiction of this Court and offer him a trial, the State of Alabama having only placed a detainer against him which such detainer has deterred him in his rehabilitation efforts as it has deprived him from eligibility in programs designed to equip offenders with the knowledge and skills essential to earn good livelihoods as free persons.”
We note here that his allegations that he signed waivers and consent to extradition are not supported by any formal type of proof.
When the motion to dismiss was filed in the Circuit Court of Russell County the trial judge issued the following order:
IN THE CIRCUIT COURT OF
RUSSELL COUNTY, ALABAMA
CIVIL ACTION NO. CV-78-41
“Let a copy of this Order be forwarded to Charles Ray Slaughter.
“DONE AND ORDERED this 20th day of April, 1978.
/s/ James H. Caldwell
Circuit Judge”
On March 14, 1978, the District Attorney of Russell County, mailed to Governor Wallace extradition papers to be sent to the Governor of Florida for the return of appellant to stand trial for robbery in that county-
Subsequently, an Executive Agreement was entered into by and between Governor Wallace and Governor Askew of Florida for the return of appellant to Russell County to stand trial for the crime of robbery.
On May 29, 1978, appellant was returned to Alabama and placed in the Russell County Jail.
On June 6, 1978, appellant was arraigned upon the indictment returned by the Grand Jury. At arraignment he was represented by Court-appointed counsel.
*DCCVIII A full-blown hearing was held on June 19, 1978, on appellant’s motion to quash and dismiss the warrant and detainer. At this hearing a number of stipulations were entered into between the State and appellant’s counsel prior to taking testimony.
At the conclusion of the testimony the trial court approved the “chronology” and suggested that it be admitted as the Court’s Exhibit No. 1. The “chronology” is as follows:
December 1, 1973 — robbery occurred (Reported)
October 5, 1974 — Telephone notice of defendant’s arrest — letter
—Recorder’s warrant issued and mailed to Florida
October 7, 1974 — Ct. Comm. Pleas warrant issued.
October 9, 1974 — Above warrant mailed to Florida.
—Phone call — to be notified by defendant’s availability for return.
March 28, 1975 — Indictment returned
March 31, 1975 — Writ issued
March 13, 1978 — Defendant’s motion received.
March 14, 1978 — Extradition papers mailed — letter and Executive Agreement
April 11, 1978 — Letter from Governor Wallace to Governor Askew
April 19,1978 — Letter from Governor Askew to Florida Prison — Letter record
April 20, 1978 — Order of Judge Caldwell
May 16, 1978 — Phone notice of defendant’s availability — memo
May 29, 1978 — Defendant returned to Russell County jail — endorsed on warrant and writ.
June 6, 1978 — Defendant arraigned in Circuit Court — record.
The above “chronology” needs to be clarified.
John Estes testified that in October 1974 he was employed by the Phenix City Police Department and assigned to the vice squad in the Detective Division. He stated that at that time he was in communication with the Jacksonville Sheriff’s Office relative to the defendant, Charles Ray Slaughter. He identified State’s Exhibit No. 5 as a cover letter which he sent to the Sheriff’s Office in Jacksonville, Florida, which contained a certified copy of the warrant charging Slaughter with robbery. He identified State’s Exhibit No. 6 as a copy of the warrant issued by Judge Belcher on October 5, 1974. He identified State Exhibit No. 7 as a memo to the file which he typed on October 5, 1974, advising Captain Nolan of a telephone conversation he had with Detective Farmer in Jacksonville and the warrant which he sent to Florida. Mr. Estes further testified that in the telephone conversation with Detective Farmer, as well as in the cover letter containing the warrant, he requested that he be notified as soon as they were through with Slaughter so that he could make preparations to get him back to Alabama. He never received a reply to this letter and telephone request.
He was asked on cross-examination if he was familiar with another warrant issued by the Court of Common Pleas for the arrest of the defendant by Detective Chap-pell Ray. He replied that it was standard procedure to secure a state warrant to be sent with the city warrant in a felony case where the defendant was in another State. He stated that a copy of these documents, information and correspondence were placed in a folder and sent to the office of the District Attorney of Russell County.
Detective Chappell B. Ray testified that he was a Lieutenant and Shift Commander with the Phenix City Police Department and had been so employed since September of 1973. He stated that on October 7, 1974, he was on assignment to the District Attorney’s Office from the City to work up the City’s cases. He stated that on that date he was given a folder by Captain Nolan, Chief of the Detective Division, containing a City warrant and was advised to obtain a State warrant for Charles Ray Slaughter. He identified State’s Exhibit No. 8 as a memo prepared by him, a copy of which was to go to the District Attorney and a copy for the original file. The substance of this memo was that a warrant had been sent to Jack *DCCIX sonville, Florida, and that the officer there stated that Mr. Slaughter had signed a waiver of extradition to come back to Alabama. The memo further reflected that the officer had the pistol that was involved in the robbery along with a statement signed by Mr. Slaughter.
On cross-examination Detective Ray testified that the purpose of sending the State warrant to Jacksonville, Florida, was to put a hold or detainer on Mr. Slaughter and that he would be extradited if he did not waive extradition. He stated that he had not talked to the authorities in Florida concerning this matter and that his memo was based on the information contained in the file which was made by Officer John Estes. He further stated that the case was presented to the Grand Jury and an indictment was returned on March 28, 1975. Detective Ray returned to his old position with the City of Phenix City and had no further connection with this case until he was called to testify at Slaughter’s trial.
The State called Investigator Thomas Boswell but appellant’s counsel requested permission to question him and the request was granted.
Boswell testified that he was an Investigator for the District Attorney’s Office and had been with this office since July 16, 1974. He stated that he had no connection with this case until 1978 when they were attempting to get Slaughter back to Alabama for trial. He said that when a valid warrant was lodged with a neighbor state that state would usually give them thirty days notice prior to the time a defendant would be released. He never received notice from Florida that Slaughter was ready to be released.
The State’s attorney then made the following stipulation:
“Your Honor, we will stipulate that there was no action taken by the State of Alabama between the time of the return of the indictment until the date of the Defendant’s motion being received and filed in the Clerk’s Office. That would be between March 28, 1975, and March 13, 1978.”
Appellant’s father, Charles E. Slaughter, Sr., was called to testify in his behalf. He stated that he visited his son at the Florida penal facility in Lake Butler, Florida. They discussed the possibility that the charges pending in Russell County, Alabama, would probably be dropped since appellant had not heard anything about them in several years. The father returned to Phenix City and contacted the Sheriff’s Office and was informed that a warrant against his son was still outstanding; that a copy of this warrant had been sent to Florida but the Sheriff’s Office had never heard anything from the authorities in Florida pertaining to this warrant.
Mr. Slaughter then contacted the District Attorney’s Office in October of 1977 and was informed they had a warrant on file and that when they got his son back from Florida they were going to prosecute him. Mr. Slaughter wrote his son and advised him that there was a warrant for his arrest for the robbery of the Piggly Wiggly Store in Phenix City. After writing his son he had no further contact with the District Attorney’s Office.
Appellant testified at the hearing on the motion to quash and dismiss the warrant and detainer. He stated he was taken into custody in Jacksonville, Florida, on October 4, 1974, and that not more than two weeks thereafter he went before some court in Florida and signed a waiver of extradition to be returned to Alabama to face the charges pending against him in Russell County. He further testified that when he was taken into custody by the authorities in Florida he gave them a statement relative to the case pending against him in Alabama and the officers acquired certain evidence from him about the Alabama case.
Slaughter further stated that he pleaded guilty to armed robbery in Duvall County, Florida (Jacksonville) and received a twenty-five year sentence in the penitentiary. This sentence was imposed on November 19, 1974; that in March of 1975 he received another twenty-five year sentence for armed robbery in Valusa County, Florida, and *DCCX that he is presently serving these two sentences at the Reception Medical Center in Lake Butler, Florida; that he is in maximum security at the penal facility. He went on to explain there are three levels of security in the Florida penal system — maximum, medium and minimum. The Alabama warrant is on file at this institution and this requires him to be kept in maximum security and that if this warrant and detainer were removed his classification would be changed to medium security. Medium security would entitle him to participate in different work release programs; “it would entitle me to vocational schooling; it would entitle me to go to a different camp with a lesser degree of security.” He further testified that the Alabama warrant and detainer has had a deterring effect on his rehabilitation efforts as it has deprived him from eligibility in programs designed to equip him with certain knowledge and skills.
He stated that after his father informed him that a warrant for his arrest was still outstanding in 1977 he filed a motion in the Circuit Court of Russell County to dismiss the warrant and detainer and again waived extradition. The record does not contain any documents in support of his testimony that he waived extradition.
On cross-examination he testified that in addition to the warrant and detainer lodged against him by Alabama the State of Georgia filed two detainers against him and these detainers were presently on file at the penal facility where he is still serving time on the robbery convictions imposed on him in 1974 and 1975 by the State of Florida. He admitted that the two detainers from Georgia also had an adverse effect in the curtailment of his privileges and custody status.
He said that he would have pleaded guilty to the present robbery case except for the fact that he was advised that a guilty plea would constitute a waiver of his speedy trial rights. In order to preserve his speedy trial motion he waived a jury trial and permitted the State to prove the case against him. The merits of the robbery case were not controverted by him in any form or fashion. His only claim of injury is the delay in bringing him to trial and this delay has caused him to be denied privileges enjoyed by prisoners without detainers against them.
Appellant further testified that his motion to quash and dismiss was prepared for him by a fellow inmate who was a judge before he was convicted and sentenced to a term of fifteen years. He did not know what kind of judge this inmate was in civilian life nor what crime he committed to draw a fifteen year sentence. It is quite evident, however, that the motion was prepared by one possessed of a legal mind whether acquired by training or experience.
Appellant stated that he was a high school graduate and had a number of hours credit from a college. Based upon the number of convictions against him it is clear that he was not a stranger to courtroom procedure. He waited to file the motion to dismiss until such time as he thought it was to his advantage to do so. He made no claim that his case was prejudiced by the efflux of time either by murky memories of witnesses in his behalf or that he had any witnesses at all whose addresses had become unknown since the date of the crime. It is obvious that he never intended to call witnesses in his behalf as he would have pleaded guilty except that his lawyer advised him that a guilty plea would have destroyed his claim to a speedy trial.
It is fundamental that the right to a speedy trial is guaranteed under the Sixth Amendment to the Constitution of the United States.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the Supreme Court held there are at least four factors to consider in dealing with speedy trial issues. They are: (1) length of delay, (2) the reason for delay, (3) the defendant’s assertion of his right, and (4) prejudice to the defendant.
Appellant contends that a delay of roughly three and one-fourth years is excessive and triggers a consideration of the other factors in Barker, supra. In Barker the *DCCXI Supreme Court held that where the defendant was not seriously prejudiced by more than five years delay between arrest and trial his Sixth Amendment right to a speedy trial was not violated.
We realize that there is no constitutional basis for holding that the right to a speedy trial can be quantified into a specific number of days, month, or, even in some cases, years. We must proceed on a case by case basis in treating all the factors set forth in Barker.
In Hopson v. State, Ala.Cr.App., 352 So.2d 500, the delay from indictment to trial was five years. In Prince v. Alabama, 507 F.2d 693 (5th Cir. 1975), it was nine years. In Sellers v. Alabama, No. 74-55-5 (M.D.Ala. filed December 4, 1974), it was two years.
In Prince v. State, Ala.Cr.App., 354 So.2d 1186, a three and one-half years delay constituted a denial of a speedy trial. In United States v. Butler, 426 F.2d 1275 (5th Cir. 1970), a delay of nine months in a case dependent upon eye-witness testimony was held to be overly long and presumptively prejudicial.
The State contends that the reason for delay was due to the failure of the Florida officials to notify them when their investigation was completed in keeping with an agreement made between Alabama detectives and the Sheriff’s Department in Jacksonville. According to the Alabama officials the standard procedure at that time was that they would receive thirty days notice prior to releasing the defendant. However, the Russell County District Attorney’s Office was not alerted until 1978 that the defendant was at their disposal. Upon receiving this information prompt arrangements were made to bring appellant to Alabama.
Appellant contended that his acts placed Alabama on notice that he wanted a speedy trial. He claims that in 1974 he signed a waiver of extradition and that this amounted to an assertion of his right to a speedy trial. The record does not support this claim by any type of document. The record reflects that appellant first asserted his right to a speedy trial when he filed a motion to quash the warrant and the de-tainer lodged against him. This motion was not filed until March 13,1978. The filing of this motion brought about the Executive Agreement between the Governor of Alabama and the Governor of Florida. By virtue of this agreement appellant was returned to Alabama on May 29, 1978; arraigned on June 6, 1978; tried on June 19, 1978; received a ten-year sentence to run consecutively with the twenty-five year sentences he was serving for robbery in Florida, and then returned to Florida in keeping with the Executive Agreement.
The only claim of prejudice made by appellant is that Alabama’s warrant and de-tainer has kept him in maximum security and prevented him from participating in rehabilitation training and work release programs. In this connection it must be emphasized that while appellant was serving time in the penal facilities in Florida the State of Georgia filed two detainers against him. According to his testimony the State of Georgia “just reinforced de-tainers in March of this year (1978) to the institution where I am now.” The Georgia detainers will most certainly play a part in preventing his early release in Florida.
We realize that Alabama has a constitutionally imposed duty to take affirmative action to return a prisoner from another state for trial. Prince v. Alabama, supra. There are three methods available to carry into effect this constitutional duty: (1) extradition, (2) a writ of habeas corpus ad prosequendum, and (3) an Executive Agreement.
Extradition may not be honored and history teaches us that in many cases it is not honored. The relief sought by the issuance of a writ of habeas corpus ad prosequendum may be granted or withheld. An Executive Agreement is probably the surest way in obtaining custody of a fugitive. In some cases one or all of these methods may be necessary to bring an accused to trial. In the present case Alabama utilized the Executive Agreement method and it proved successful.
*DCCXII We do not think the prosecuting officials made a “good faith effort” to gain custody of appellant from the date of the return of the indictment on March 28, 1975, and March 13, 1978, when appellant filed his motion to dismiss. They should have pursued one of the methods set out above. However, in balancing the sensitive and difficult circumstances mandated by the four factors set forth in Barker v. Wingo, supra, we are hard pressed to find that appellant has suffered any real prejudice under the facts of this case.
We have given this case careful and diligent consideration and it it our judgment that it is due to be affirmed.
AFFIRMED.
All the Judges concur, except TYSON, J., who concurs in the result only.