## NATHANIEL TONY GEE *v.* STATE OF MARYLAND

[No. 1185, September Term, 1982.]

*Decided May 5, 1983.*

The cause was submitted on briefs to LOWE, GARRITY and ALPERT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Isaac S. Kershner, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Joseph Steigerwald, Assistant State's Attorney for Baltimore County,* for appellee.

LOWE, J., delivered the opinion of the Court.

It is with trepidation and a sense of deja vu that we reviewed the facts of this speedy trial case. It is unnervingly similar to *Brady v. State,* 291 Md. 261 (1981),[1] wherein we were brought to task for our apparent confusion of the mechanics of the *Barker v. Wingo,* 407 U.S. 514 (1972), balancing test, our "failure to note" or place proper "significance" on what was considered pertinent and controlling by the Court of Appeals, *i.e.,* the State's "particularly disheartening" failure "to coordinate the efforts of its various criminal divisions in attempting to locate a defendant." It was "[t]his prosecutorial indifference [which] tip[ped] the scales most heavily in Brady's favor." *Brady, II,* 291 Md. at 267.

Brady, who was first charged and dismissed in a district court, was subsequently indicted by the Grand Jury for Anne Arundel County. When he did not appear for arraignment, a bench warrant was issued for his arrest, but due to his absence from his last known address, he was not served. Two months after indictment, in fact, and unbeknownst to the State, Brady was held for a period of 7 months in the Baltimore City jail on an unrelated charge. Held by detainer upon his release, he was tried 2 months later.

After severely criticizing the State for its "manifest and egregious" neglect, and reprimanding us for our obtuse inability to discern the significance of that conduct in balancing the *Barker v. Wingo* factors, the Court of Appeals concluded that:

"The factor most determinative of the issue, in this case, is *the reason for the delay:* prosecutorial indifference. Brady's trial was not delayed because of someone's professional judgment regarding the allocation of scarce resources, but because of the

---

1. Brady has a long and interesting history in our appellant forums: See Brady v. State, 288 Md. 61 (1980), *Brady I,* wherein the Court of Appeals reversed our September Term, 1978 unreported opinion, Brady v. State, 291 Md. 261 (1981), *Brady II,* wherein the Court of Appeals reversed our decision in Brady v. State, 46 Md. App. 518 (1980).

inexcusable failure of the State to check for Brady's presence within the correctional system itself." *Id.* at 269-270.

Recognizing that

"[t]he delay here purely and simply was brought about by the fact that Brady was in jail elsewhere on unrelated charges," (*Id.* at 271),

the dissent expressed its concern that the majority had

"put its thumb on the scale on the side of the defendant in the balancing process," (*Id.* at 274),

because

"[a]ll the majority really finds to place in the balance against the State is its failure to know that Brady was in custody." *Id.* at 273.

That is the only possible message which we too are able to discern from *Brady,* and having twice been not only corrected but reprimanded (see *Brady v. State,* 288 Md. 61 (1980), *Brady I*), in this very same case, we approach the appeal of Nathaniel Tony Gee from a robbery conviction in the Circuit Court for Baltimore County with an excess of caution.

— facts —

Tony Gee was convicted by a jury of robbery with a deadly weapon and the use of a handgun in that crime on February 16, 1982. Two and one-half months prior thereto, December 3, 1981, his motion to dismiss for want of a speedy trial was heard and denied the day after the hearing. The opinion of the hearing judge — who was not the judge before whom appellant Gee was tried and convicted — contains the relevant facts relating to the issue before us.

"On Thursday, December 3, 1981, hearing was held on Defendant's Motion to Dismiss and argument of counsel having been heard, the Court makes the following findings:

1. On December 19, 1980, the Baltimore County Police Department submitted an application for an arrest warrant for the Defendant and said application was lost due to death of a Baltimore County Commissioner. On January 2, 1981, another application for said warrant was submitted and the warrant was issued on January 3, 1981.

2. On February 4, 1981, Defendant was arrested on an unrelated charge to the one presently before the Court and in March of 1981, was incercerated [sic] in the Division of Correction on said charge.

3. In the meantime the warrant relating to the present charge was sent to the Baltimore City Police with several addresses and service was not made since the addresses were faulty.

4. On September 9, 1981, a detainer relating to this case was filed by the Baltimore County Police at the Maryland Correctional Training Center, the Defendant's place of incarceration, and according to the Defendant's allegations he was immediately removed from his work release assignment. On September 16, 1981, the Defendant filed a request for disposition of his case under the Intra State Detainer Provision. The warrant was served on the Defendant on October 7, 1981, and the indictment relating to this case was presented on November 2, 1981. The Defendant was arraigned on November 17, 1981, and the case was set for trial on December 3, 1981.

5. Defendant and his counsel aver that as a result of the delay in bringing charges, the Defendant has lost his opportunities to properly defend his case including the location of witnesses, recovery of physical evidence and his loss of memory concerning details of the night in question.

The Court finds that the Defendant by his own actions contributed to any delay that occurred. Fur-

ther, the Court finds that the Defendant's liberty was not restricted as far as the present case is concerned until he was served with the warrant on October 7, 1981, since he was already incarcerated on another charge.

In addition, the Court finds as a matter of law that the Defendant's right to a speedy trial is not triggered until he is either arrested, indicted or a criminal information is filed against him. See, *United States v. Marion, et al.,* 404 U. S. 307 (1971) pages 320, 321. As to the statutory rules, see *State v. Temoney,* 45 Md. App. 569 (1980) pages 575, 576. The Court feels *Brady v. State,* September Term 1980, decided September 14, 1981, 291 Md. 261 is inapposite.

In view of the aforegoing, it is this 4th day of December, 1981, ORDERED that Defendant's Motion to Dismiss is hereby DENIED. On the above-stated date Defendant moved for a postponement of the trial of his case in the event the Motion to Dismiss was denied and the Court grants said postponement.

> *s/J H Langrall*
> James   H.   Langrall,
> Judge"

Our original unreported *Brady v. State* in 1978 was predicated upon the same reasoning, that a defendant who is arrested for a second crime before he has been caught up with to be charged with the first, has "by his own actions contributed to any delay that occurred." We found that we were wrong. We also have found, after reviewing the facts here in light of the two *Bradys* that they are controlling. The similiarity is apparent by comparison of the factors we were told to consider in *Barker v. Wingo, supra.*

### —length of delay—

The initial factor in the balancing equation — the length of delay — is contended by the appellant to be 11 months, running from the statement of charges and warrant for appellant's arrest issued January 3, 1981, to the date of the denial of the motion to dismiss on December 3, 1981. The two month delay thereafter, due to appellant's postponement, is not counted.

That delay in *Brady* was 11 months and 18 days. *Brady II* at 273.[2]

### —reason for delay—

The reason for at least 7 months of the delay in this case was purely and simply Gee's unrelated incarceration in Hagerstown. The reason for delay of at least 7 months in *Brady* was "purely and simply" his incarceration in Baltimore on unrelated charges.

### —assertion of the right—

The State concedes that Gee asserted his right through a request to dispose speedily of his detainer. Brady also was conceded to have asserted his right in a timely manner.

### —prejudice—

Gee's counsel argued that actual prejudice arose from an impairment of defense by loss of memory and of witnesses, removal from a work release program due to the detainer making his pretrial incarceration more oppressive, and prolonged anxiety and concern, all in addition to prejudice

---

2. Brady's original charge on June 7, 1977, was dismissed on June 19, 1977. On August 22, 1977 he was indicted causing the speedy trial clock to commence. He was finally tried on August 8, 1978. Although the majority in *Brady II* counted the time from June 7, 1977 through August 8, 1978 (14 months) the dissent pointed out the error of counting time between a dismissal and a reindictment. The Supreme Court agreed with the dissent. United States v. MacDonald, 456 U.S. 1, 71 L.Ed. 2d 696 (1982).

inherently presumed. Those were the precise factors upon which we were instructed by *Brady I, i.e.,* 288 Md. at 67-70. *Brady II* pointed out that Brady suffered two months of oppressive pretrial incarceration that we had overlooked; anxiety and concern upon his sudden awareness that he was in jeopardy beyond his unrelated imprisonment; and, despite his protestations to the contrary, an impaired defense by the decreased chance of finding some pro-defense witnesses, coupled with his own memory impairment by passage of time. *Brady II,* 291 Md. at 267-269.

### —balancing the factors—

The balance has been made for us. Only the names have been changed. *Brady II, supra.* The strikingly similar, if not identical, factual analogies bind us to the result. A convicted criminal goes free because he was in jail for another crime.

The State seeks to avoid this result by arguing that the speedy trial clock does not begin to run upon the issuance of an arrest warrant, but the right is triggered only by actual arrest. The State has perhaps forgotten its concession on that precise issue in *Daniels v. State,* 30 Md. App. 432, 434 (1976), in which we held that the

> "[a]ppellant first became an accused by the execution of a warrant for his arrest on September 27, 1973."

In an explanatory footnote we point out the fallacy of the precise contention made here by the State. Ironically, we rendered the reasoning to a footnote because in that case the State conceded the beginning point.

> "The trial judge held that the beginning of the period of delay was appellant's indictment. The State concedes that the beginning point was when appellant was subject to arrest by virtue of the warrant, which was the first charging document, executed by the trooper on September 27, 1973.

In State v. Hunter, 16 Md. App. 306, 311 we have held that speedy trial rights are calculated from

'. . . the date of the commencement by way of arrest, warrant, information or indictment, *whichever shall first occur,* and then forward to the date of the trial or hearing.'

In State v. Hamilton, 14 Md. App. 582, we noted that our analysis in State v. Lawless, 13 Md. App. 220, 229-230 of the point at which the right to a speedy trial attaches had preceded the Supreme Court's later decision in United States v. Marion, 404 U. S. 307. Hunter followed, making it clear that however other states may read Marion, our position is unequivocal." 30 Md. App. at 434-435, n. 2.

In light of the result here we need not address appellant's other two issues which contest the sufficiency of the evidence and the admissibility of the contents of a witness's telephone conversation with appellant's companion. Hoping to find that our technical dismissal was justified in releasing an innocent man or even one convicted by a procedural impropriety, we carefully reviewed the evidence for its sufficiency and admissibility. Suffice to say as to the former our review of the record disclosed sufficient evidence to sustain the verdict.

As to the evidentiary issue, the State concedes that the testimony regarding the telephone conversation was hearsay. As pointed out by the State, however, the conversation did nothing to establish appellant's criminal agency, which was the only contested issue, and was clearly harmless beyond a reasonable doubt. *Cf. Dorsey v. State,* 276 Md. 638 (1976).

Appellant cannot be exonerated but neither can he be incarcerated.

> *Judgment reversed.*
> *Costs to be paid by Baltimore County.*