471 A.2d 712

**STATE of Maryland**

v.

**Nathaniel Tony GEE.**

**No. 81, Sept. Term, 1983.**

Court of Appeals of Maryland.

Feb. 23, 1984.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellant.

George E. Burns, Jr., Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

## I.

[1]  The guidelines for the application of the "amorphous" and "slippery" right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution are

**568**

loud and clear.[1] In several cases beginning with *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) the Supreme Court of the United States has declared that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused'. . . . On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." *Marion* at 313, 92 S.Ct. at 459. A person becomes an "accused" *only* upon his arrest or the filing of an indictment, information or other formal charge against him.

■ Before the intervention of arrest or formal charge the Sixth Amendment speedy trial clause is not relevant. Any passage of time between crime and arrest or charge is considered in terms of due process of law and statutes of limitation. *Id.* at 321–325, 92 S.Ct. at 2187–89. The Supreme Court has consistently adhered to this view of the speedy trial clause. *See United States v. MacDonald,* 456 U.S. 1, 6–8, 102 S.Ct. 1497, 1501–02, 71 L.Ed.2d 696 (1982); *United States v. Lovasco,* 431 U.S. 783, 788–792, 97 S.Ct. 2044, 2048–50, 52 L.Ed.2d 752, *reh. den.,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *Dillingham v. United States,* 423 U.S. 64, 64–65, 96 S.Ct. 303, 303, 46 L.Ed.2d 205

---

1. The right was so characterized by Mr. Justice Powell in *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972).

The speedy trial clause of the Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial. . . ." Article 21 of the Maryland Declaration of Rights similarly mandates "[t]hat in all criminal prosecutions, every man hath a right . . . to a speedy trial. . . ."

This appeal is presented to us only in the context of the Sixth Amendment right, made applicable to the states through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In any event, as we did in *Erbe v. State,* 276 Md. 541, 546, 350 A.2d 640 (1976), for the purposes of this decision we regard our discussion of the federal right as equally applicable to the Maryland right. *But see Erbe v. State,* at 544–546, 350 A.2d 640 and *Smith v. State,* 276 Md. 521, 526–527, 350 A.2d 628 (1976).

(1975); *Moore v. Arizona,* 414 U.S. 25, 26–27, 94 S.Ct. 188, 189–90, 38 L.Ed.2d 183 (1973); *Kirby v. Illinois,* 406 U.S. 682, 689–690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). In *Lovasco* the Court expressly affirmed the *Marion* view. It observed that the Court's "analysis of the language, history, and purposes of the [speedy trial] Clause persuaded [it] that only 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections' of that provision." 431 U.S. at 788–789, 97 S.Ct. at 2048, quoting *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. It then advanced further reasons why the *Marion* rule was sound:

"It requires no extended argument to establish that prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty 'would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself'. . . . " 431 U.S. at 790–791, 97 S.Ct. at 2048–49 (footnote and citation omitted).

Upon the intervention of an arrest or formal charge the Sixth Amendment speedy trial right is invoked. There follows "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *Barker* identified some of the factors which are to be assessed in determining whether a defendant has been deprived of the right. It enumerated four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192. The Court observed, "The length of the delay is to some extent a triggering mechanism. Until there is

some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

## II.

Nathaniel Tony Gee went to trial before a jury in the Circuit Court for Baltimore County on 16 February 1982. He was found guilty of the crimes of robbery with a deadly weapon and the use of a handgun in the commission of a felony. The procedural steps leading to the trial had commenced some time before. On 3 January 1981, a police officer applied for a statement of charges with respect to Gee.[2] The application was acted on the same date. A District Court Commissioner granted the application and filed a "Statement of Charges" whereby Gee was charged with the felony of robbery with a deadly weapon and the misdemeanor of the use of a handgun in the commission of the robbery. At the same time the Commissioner issued a warrant for the arrest of Gee. Attempts to serve the warrant were unsuccessful. On 4 February 1981, Gee was arrested on other charges and was incarcerated under the jurisdiction of the Division of Correction. The record before us does not show on what date the authorities interested in the arrest warrant learned of his whereabouts. In any event, a detainer against Gee with respect to the charges of 3 January 1981, was filed on 9 September 1981. A week later Gee requested disposition of that case under the Intrastate Detainer Act. The arrest warrant was served on him on 7 October 1981, and on 2 November an indictment was returned. He was arraigned on 17 November and trial was set for 3 December. On 30 November he filed a motion to dismiss the indictment for lack of a speedy trial. The motion was heard on 3 December. Trial on the indictment was postponed at Gee's request. The motion to dismiss was

---

2. The officer had previously applied for a statement of charges on 19 December 1980. No action was taken thereon because it was lost upon the death of the judicial officer with whom it had been filed.

denied on 4 December. The case proceeded to trial on 16 February 1982 after Gee's demand for discovery and motion to produce documents had been answered by the State. Gee appealed from the judgments entered on his convictions.

The Court of Special Appeals agreed with Gee's contention that he had been denied a speedy trial. It accepted his assertion that there had been a delay of 11 months in bringing him to trial, running from the issuance of the warrant for his arrest on 3 January 1981 to the hearing on 3 December 1981 of his motion to dismiss the indictment. Deeming this interval to be presumptively prejudicial, the court looked to the other three interrelated factors. It thought that the facts and circumstances surrounding the delay as to Gee was so similar to those present in the delay in bringing one Willie Frederick Brady to trial that the opinions of the Court of Appeals in that case, resulting in a dismissal of the charges against Brady, were controlling.[3] Acting under its belief that it was bound by our *Brady* opinions to reach the same result with respect to Gee, the Court of Special Appeals reversed the judgments entered by the trial court. *Gee v. State,* 54 Md.App. 549, 459 A.2d 608 (1983).

### III.

In making our independent constitutional appraisal of whether Gee was denied his Sixth Amendment right to a speedy trial we turn to the first factor to be assessed— length of delay. In ascertaining the length of delay we must first determine when the speedy trial right was acti-

---

**3.** Brady's claim of a violation of the speedy trial guarantee has been before the intermediate appellate court and the Court of Appeals on two occasions. On each occasion the Court of Special Appeals found no violation of the Sixth Amendment speedy trial clause, the first time in an unreported opinion and the second time in *Brady v. State,* 46 Md.App. 518, 419 A.2d 390 (1980). On each occasion the Court of Appeals reversed the judgment of the intermediate court to the end that the indictment against Brady was dismissed. *Brady v. State,* 288 Md. 61, 415 A.2d 1126 (1980) and *Brady v. State,* 291 Md. 261, 434 A.2d 574 (1981).

vated. As we have seen, this would occur upon an arrest or upon the filing of a formal charge.

It is obvious that the *issuance* of the warrant of arrest placed no actual restraint upon Gee's liberty. Thus, the "arrest" requirement of the speedy trial rule was in no way satisfied by the mere issuance of the warrant. The Supreme Court teachings leave no doubt whatsoever that the *issuance* in itself of an arrest warrant as a prelude to arrest, even though based, as it must be, upon probable cause to believe that the potential arrestee committed the crime, does not suffice to activate the speedy trial right. To satisfy the "arrest" aspect of the Supreme Court rule, the warrant must be "executed by the arrest of the defendant. . . ." *See* Maryland District Rule 720 f. It follows that if the issuance of the arrest warrant were to be the means of starting the speedy trial clock, it would have to be on the basis that the warrant constituted a "formal charge" in the contemplation of the Sixth Amendment. So we look to the status of the arrest warrant here which was issued by a judicial officer of the Maryland District Court.

## IV.

As defined in the rules of the Maryland District Court, a warrant is a written order by a judicial officer (a District Court judge or commissioner, M.D.R. 702 f) directed to a peace officer commanding him to arrest the person named in it. M.D.R. 702 m. There must be attached to it a copy of the charging document. M.D.R. 720 e. A charging document includes a statement of charges. M.D.R. 702 a. A statement of charges is based on an accusation made by a peace officer or other person. M.D.R. 702 i. It must contain a reference to the statute or other authority for the crimes alleged. M.D.R. 711 a. Before arrest a statement of charges may be filed by a judicial officer upon written application containing "a verified statement by a peace officer or a statement by a person, signed before the judicial

officer under oath, which shows probable cause that the defendant committed the offense charged." M.D.R. 720 b. As we have noted, the warrant with the appended statement of charges is executed by the arrest of the defendant. M.D.R. 720 f. A copy of the warrant and the charging document must be served on the defendant as soon as possible after his arrest. *Id.*[4]

A defendant may be tried in the District Court upon the document consisting of the warrant and the statement of charges when the offense charged is under the jurisdiction of that court. M.D.R. 710 d. He may be tried in the circuit court upon that document when he prays a jury trial in the District Court or appeals from a judgment of the District Court. Maryland Rule 710 d. With exceptions not here relevant, the District Court does not have jurisdiction of an offense otherwise within its jurisdiction if a person is charged with an offense arising from the same circumstances but not within the District Court's jurisdiction. In that case the circuit court has exclusive original jurisdiction over all the offenses. Md.Code (1974, 1983 Cum.Supp.) § 4–302(e) of the Courts and Judicial Proceedings Article. Trial in such event may be had only in the circuit court upon an indictment (a charging document returned by a grand jury, Md.Rule 702 c) or an information (a charging document in which the accusation is made by the State's Attorney and which is filed with the court, Md.Rule 702 d). *See* Md.Rule 710 a.[5]

---

4.  In the form used by the Maryland District Court the warrant and the statement of charges are on one piece of paper, the warrant immediately following the statement.

5.  With respect to a circuit court, an offense shall be tried only on a charging document. Maryland Rule 710 a. " 'Charging document' means a written accusation, filed in court, alleging that a defendant has committed an offense. It includes an indictment, an information and any [Maryland District Court] charging document *when a jury trial has been prayed in the District Court or an appeal has been taken from the judgment of the District Court.*" Md.Rule 702 a (emphasis added).

## V.

■ We think that the document consisting of a warrant of arrest and statement of charges on which the warrant is based (warrant-statement of charges) is a "formal charge" in the contemplation of the speedy trial right *when a defendant is subject to be tried on that document.* In that event the criminal prosecution has truly commenced and the putative defendant has become an "accused." The State has committed itself to prosecute and the adverse positions of State and defendant have solidified. "It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois,* 406 U.S. at 689, 92 S.Ct. at 1882. A warrant-statement of charges on which a defendant can be tried is tantamount to an indictment or an information. Therefore, its mere issuance marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable. *Id.* at 690, 92 S.Ct. at 1882.

On the other hand when the defendant cannot be tried under the warrant-statement of charges he is not held to answer a criminal charge on the basis of that document. Its issuance does not mark the onset of formal prosecutorial proceedings to which the Sixth Amendment guarantee is applicable, nor has the putative defendant thereby become an "accused." The State has not by the issuance of such a warrant-statement of charges committed itself to prosecute. Before it can proceed the grand jury must indict or the State's Attorney must file an information. Neither is obliged to do so. Until an indictment has been returned or an information filed the adverse positions of State and defendant have not solidified, nor is the defendant at that point faced with the prosecutorial forces of organized society and immersed in the intricacies of substantive and procedural law. In such circumstances the warrant-statement of charges is not the equivalent of an indictment or an information. It is not a "formal charge" and thus, its mere issuance does not activate the speedy trial provision.

The opinions of this Court support this view inasmuch as they have been in full accord with the Supreme Court rule. We have not expressly considered the issuance of warrant-statement of charges in assessing the length of delay factor, but we have looked only to some formal charge by indictment or information or to an actual arrest (without regard to whether it was warrantless or under authority of a warrant) as the starting point. See, for example, *Brady v. State,* 291 Md. 261, 434 A.2d 574 (1981); *Wilson v. State,* 281 Md. 640, 382 A.2d 1053, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978); *Jones v. State,* 279 Md. 1, 367 A.2d 1 (1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); *Erbe v. State,* 276 Md. 541, 350 A.2d 640 (1976); *Smith v. State,* 276 Md. 521, 350 A.2d 628 (1976); and *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975). *See also* Gilbert and Moylan, *Maryland Criminal Law: Practice and Procedure* § 42.2 (1983).

The Court of Special Appeals, however, has travelled two divergent paths. One group of its opinions reach decision regarding length of delay only upon consideration of indictment, information, or actual arrest. See, for example, *Smallwood v. State,* 51 Md.App. 463, 443 A.2d 1003 (1982); *Nocera v. State,* 36 Md.App. 317, 374 A.2d 608, *cert. denied,* 281 Md. 741 (1977); and *Ward v. State,* 30 Md.App. 113, 351 A.2d 452, *cert. denied,* 277 Md. 742 (1976). Another group of its opinions, dealing with prosecutions of crimes not within the jurisdiction of the Maryland District Court, apply the proposition that the speedy trial provision is in any event activated by the mere issuance of a warrant of arrest. The case at hand is representative of this group and reflects what apparently is the prevailing view of that court. *See also Powell v. State,* 56 Md.App. 351, 467 A.2d 1052 (1983); *Strickler v. State,* 55 Md.App. 688, 466 A.2d 51 (1983); *Daniels v. State,* 30 Md.App. 432, 352 A.2d 859, *cert. denied,* 278 Md. 179 (1976).[6]

---

**6.** Petition for a writ of certiorari has been filed in each of *Powell v. State,* 56 Md.App. 351, 467 A.2d 1052 (1983), and *Strickler v. State,*

The view of the Court of Special Appeals that the speedy trial clause is in any event activated upon the issuance of an arrest warrant apparently stems from the statement in *State v. Lawless,* 13 Md.App. 220, 229, 283 A.2d 160 (1971), *cert. denied,* 264 Md. 749, *cert. denied,* 409 U.S. 855, 93 S.Ct. 192, 34 L.Ed.2d 99 (1972), that "[i]n reckoning delay, it is well settled that for 'speedy trial' purposes, we look only at the time from the commencement of the prosecution (by way of warrant, information or indictment) to the time of trial." *Id.* 13 Md.App. at 229, 283 A.2d 160. *Lawless* was decided a few weeks prior to *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, which added an actual arrest to the circumstances which would invoke the speedy trial right. In *State v. Hunter,* 16 Md.App. 306, 311, 295 A.2d 779 (1972), the Court of Special Appeals modified the *Lawless* statement by adding "arrest" to comply with the *Marion* holding.

The times the Court of Special Appeals went astray it did so because it did not appreciate the meaning of "warrant" as used in *Lawless.* When *Lawless* is read with *State v. Hamilton,* 14 Md.App. 582, 585 n. 6, 287 A.2d 791 (1972) and *State v. Jones,* 18 Md.App. 11, 305 A.2d 177 (1973), it becomes clear, we believe, that "warrant" as used in *Lawless* referred to another manner, in addition to indictment and information, by which a defendant could be "formally charged" and thus become an "accused." As *Hamilton* and *Jones* indicate, this would only occur when the defendant could be tried on the warrant-statement of charges itself.[7]

---

55 Md.App. 688, 466 A.2d 51 (1983), but at this date the Court of Appeals has not acted thereon.

It appears that there also has been some confusion with respect to the matter on the part of the State. In the opinion in the case *sub judice* the Court of Special Appeals indicates that in *Daniels v. State,* 30 Md.App. 432, 434, 352 A.2d 859, cert. denied, 278 Md. 719 (1976), the State conceded that the issuance of the arrest warrant started the speedy trial clock. *Gee v. State,* 54 Md.App. 549, 555, 459 A.2d 608 (1983).

**7.** As we have seen, under a "warrant-statement of charges" charging only offenses under the jurisdiction of the District Court, the speedy

## VI.

 The statement of charges appended to the warrant here charged that Gee committed robbery with a deadly weapon in violation of Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 488, and using a handgun in the commission of a felony proscribed by Art. 27, § 36B(d). The first crime is a felony, the second is a misdemeanor. Inasmuch as the felony offense was not within the jurisdiction of the District Court, Md.Code (1974, 1983 Cum.Supp.) § 4–302(a) of the Courts and Judicial Proceedings Article, the circuit court had exclusive jurisdiction over both offenses, § 4–302(e). The circuit court could not try Gee on the warrant-statement of charges, Md.Rule 702 a and Md.Rule 710 a and d, but only on an indictment or an information, Md.Rule 710 b and c.[8] Therefore, the warrant-statement of charges was not a "formal charge" and, contrary to the suggestion of Gee and the determination of the Court of Special Appeals, its issuance did not activate the speedy trial right.

Certainly, in any event, the right would have been activated on 7 October 1981 when the warrant was executed by the arrest of Gee. The trial court so held. It may be, however, that the right was earlier activated by the filing of the detainer on 9 September 1981. It is arguable that the detainer was the equivalent of an arrest. Like an arrest, it placed a restraint on Gee, seriously interfering with his

---

trial clock starts to run upon the issuance of the warrant for it then constitutes a formal charge. If the defendant removes the trial to a circuit court by praying a trial by jury, any normal delay in bringing him to trial by reason of the request would be, of course, chargeable to him.

We note that at times the Court of Special Appeals has referred to the "execution" of a warrant in the sense of its "issuance" as distinguished from its "execution" by service of it which effects an actual arrest. *See Daniels v. State,* 30 Md.App. at 434, 352 A.2d 859; Maryland District Rule 720 f.

**8.** Gee was tried on an indictment containing 12 counts.

liberty[9] by precluding his freedom upon his release from incarceration by reason of the other convictions, and by its impact on such prison privileges he may have enjoyed.[10] It may be said that the detainer subjected him to further public obloquy, and created anxiety in him, his family and his friends, as with an actual arrest. *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. *Contra, Slaughter v. State,* 377 So.2d 625 (Ala.Crim.App.1979). *See McCarty v. State,* 498 S.W.2d 212 (Tex.Crim.App.1973); *Maryland Extradition Manual,* 43–44, 56–57, (N. Rogers ed. 1980). But there is no need in this case to decide whether the detainer was such a restraint on Gee's liberty as to start the speedy trial clock. Even accounting from the filing of the detainer (about a month before the actual arrest) the delay is not of constitutional dimension. So we assume *arguendo,* but do not decide, that the clock started upon the filing of the detainer.

■ The interval from the filing of the detainer on 9 September 1981 to the trial on 16 February 1982 was less than six months. In the circumstances of this case, a delay of that length is clearly not inordinate. We are not aware of an opinion of the Supreme Court of the United States or of the appellate courts of this State which holds that a delay of six months is of constitutional dimension.[11] Since the

---

9. The trial court thought "that the Defendant's liberty was not restricted as far as the present case is concerned until he was served with the warrant on October 7, 1981, since he was already incarcerated on another charge."

10. According to the Court of Special Appeals, defense counsel stated that the detainer resulted in the removal of Gee from a work release program. *Gee v. State,* 54 Md.App. at 554, 459 A.2d 608.

11. Delays triggering the balancing test were five years in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101; 14 months in *Brady v. State,* 291 Md. 261, 434 A.2d 574; four years two months in *Wilson v. State,* 281 Md. 640, 382 A.2d 1053, cert. denied, 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978); two and a half years in *Jones v. State,* 279 Md. 1, 367 A.2d 1 (1976), cert. denied, 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); 15 months in *Smith v. State,* 276 Md. 521, 350 A.2d 628; one year 14 days in *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975).

delay in bringing Gee to trial was not presumptively prejudi-
cial, there is no necessity for inquiry into the other factors
which go into the balance. The short of it is that Gee was
not denied the speedy trial guaranteed by the Sixth Amend-
ment. The judgment of the Court of Special Appeals is
reversed.[12]

JUDGMENT OF THE COURT OF SPECIAL APPEALS
REVERSED.

CASE REMANDED TO THAT COURT WITH IN-
STRUCTION TO AFFIRM THE JUDGMENTS OF THE
CIRCUIT COURT FOR BALTIMORE COUNTY.

COSTS TO BE PAID BY RESPONDENT.

---

12. Gee cites *McMorris v. State,* 277 Md. 62, 355 A.2d 438 (1976) as
support for his contention that he became an "accused" by virtue of
the arrest warrant. We held in that case that the prosecution was
"commenced" upon the issuance of an arrest warrant by the District
Court of Maryland and that the statute of limitations was thereby
tolled. *Id.* at 70, 355 A.2d 438. But the warrant in that case covered
only an offense within the jurisdiction of the District Court, and the
defendant *could have been tried thereon,* even though the State
elected to obtain an indictment which included charges which could
not be tried in the District Court.

Even if McMorris were apposite to the question of when a speedy
trial right is activated, its holding is not in conflict with our holding
here. We recognize that the issuance of a warrant-statement of
charges on which the defendant can be tried commences the prosecu-
tion and renders the subject of the warrant an accused.