Appellant, Thedford A. Huguley, was found guilty by the Municipal Court of Demopolis, Alabama, in three cases for negotiating worthless negotiable instruments in violation of §13A-9-13.1, Code of Alabama 1975. Appellant was sentenced to pay a fine of $100.00 and court costs of $22.00 in each case. She appealed to the Circuit Court of Marengo County, where the cases were consolidated and tried de novo before the circuit judge without a jury. The circuit judge found appellant guilty in all three cases, and sentenced her to thirty days' confinement in the county jail in each case. He further ordered her to pay a fine of $200.00 and the court costs in each case. From these judgments of conviction she appeals. The cases are consolidated for appeal by agreement.
Mrs. Huguley owned and operated a record business in Demopolis, Alabama, at 811 E. Pettus Street, known as "We've Got It Records". She occasionally purchased merchandise from Music Center Record Distributors of Birmingham, Alabama (hereinafter referred to as Company).
It is undisputed in the evidence that appellant purchased deliveries of records and tapes from the Company on three separate dates in August of 1983. Three checks drawn on the Robertson Banking Company of Demopolis, on the following dates in August, 1983: August 5, $257.85; August 12, $277.48; August 23, $281.18, in payment for the merchandise were returned unpaid for insufficient funds.
It appears from the record that the checks were presented for payment within thirty days after delivery, and payment was refused by the drawee for lack of funds. Mrs. Huguley's name and the name and address of her business were printed on the face of the checks. The name of the bank, Robertson Banking Company, and Mrs. Huguley's account number were also printed on each check. She prepared and signed each check, and received the merchandise in each instance.
After all three checks had been returned unpaid to the Company, it posted a letter by certified mail, return receipt requested, to Mrs. Huguley at the address of her business printed on the face of the checks. The letter advised Mrs. Huguley that the three checks had been returned unpaid due to insufficient funds, and gave her notice that she had ten days to make the checks good or criminal proceedings would be commenced. The letter was delivered to Mrs. Huguley's address, 811 E. Pettus Street, Demopolis, Alabama, on September 10, 1983, and receipted for by Octavia Rowser, the young daughter of Mrs. Huguley.
Mr. Virgil Lugar, Jr., general manager of the Company, testified that he called Mrs. Huguley on September 27, 1983, about the checks, and she agreed to make them good by paying $100.00 per week by check until the amount was paid in full. No such payments were ever made.
Having received no payments, Mr. Lugar journeyed to Demopolis on October 18, 1983, and made an effort to locate Mrs. Huguley. He visited her place of business, her apartment, and the bank, but could not find her. He then obtained warrants for her arrest for negotiating worthless negotiable instruments. She was arrested later that day.
Mr. Lugar further testified that the following day, October 19, 1983, Mrs. Huguley came to Birmingham, and paid the full amount of the checks in cash plus ten dollars service charge for each check. He stated that he gave her a receipt for the money, but mistakenly dated the receipt October 17, 1983.
Mrs. Huguley denied receiving the letter from the Company notifying her that the checks had been returned due to insufficient funds. She admitted, however, that her daughter, Octavia Rowser, worked for her in her business.
She testified that she had called the Company in September and told Mr. Lugar that the checks were going to "bounce" because she had to use the money in her account for an "emergency". She further stated that she made arrangements to pay off the checks. *Page 881 
The record reflects that Mrs. Huguley was arrested on October 18, 1983, pursuant to the warrants issued by the Municipal Court. W.W. Dinning, Jr. testified that he was the judge of the Municipal Court of the City of Demopolis, and that Mrs. Huguley called him on the telephone from the police station at the time of her arrest on October 18, 1983, and told him that there had been some "mixup". He further testified that she told him that she was expecting a check from a law suit in Selma, and when she got the check she would use the money to pay off the checks; that all she needed to do was drive to Selma, and get the money from her lawyer. He further testified that the next day, October 19, 1983, she came to his office, and told him she was going to pay the checks off that day. He stated that he told Mrs. Huguley that the warrants had been signed, a court date set, and she needed to be present in court at the proper time. Mrs. Huguley denied telling Judge Dinning that she was expecting a check from a law suit in Selma, and also denied that she told him on October 19th that she was going to pay off the checks that day.
Mrs. Huguley testified that she mailed the full amount in cash to cover the three checks to the Company on Friday, October 14, 1983. She stated that she wrapped the money in paper and mailed it without having it registered or certified. She stated that she went to Birmingham on Wednesday. October 19, 1983, to get a receipt for the money, and when she arrived, Mr. Lugar told her he had received the money. She testified that he gave her a receipt dated October 17, 1983.
Mrs. Huguley claims that she had the funds in her account to cover the checks at the time of delivery, but when the Company waited until the end of the month to present them for collection, there were insufficient funds left in the account to cover the checks. She also claims that she paid the full amount due by mail, and that the company received the funds on October 17th, the day before the warrants were obtained.
The primary issue raised by appellant on appeal is whether there was sufficient evidence to establish the requisite criminal intent required for a conviction of the crime of Negotiating Worthless Negotiable Instruments in violation of §13A-9-13.1, supra.
Section 13A-9-13.1, provides as follows:
 "(a) A person commits the crime of negotiating a worthless negotiable instrument if he negotiates or delivers a negotiable instrument for a thing of value and with the intent, knowledge or expectation that it will not be honored by the drawee.
 "(b) For the purposes of this section, it is prima facie evidence that the maker or drawer intended, knew or expected that the instrument would not be honored if:
 "(1) The maker or drawer had no such account with the drawee at the time the negotiable instrument was negotiated or delivered, as determined according to section 7-3-503 (2); or
 "(2) Payment was refused by the drawee for lack of funds, upon presentation within 30 days after delivery, and the maker or drawer shall not have paid the holder thereof the amount due thereon, together with a service charge of not more than $10.00, within 10 days after receiving written notice from the holder of the instrument that payment was refused upon such instrument, as provided in section 13A-9-13.2; or
 "(3) Notice that payment was refused is mailed by certified or registered mail and is returned undelivered to the sender, when such notice is mailed within a reasonable time after dishonor to the address printed on the instrument or given by the maker or drawer at the time of issuance of the instrument.
 "(c) Negotiating a worthless negotiable instrument is a Class A misdemeanor.
 "(d) The definition of `negotiable instrument' in section 7-3-104 applies to this section and sections 13A-9-13.2 and 13A-9-13.3. *Page 882 
 "(e) The definition of `negotiation' in section 7-3-202 applies to this section and sections 13A-9-13.2 and 13A-9-13.3.
 "(f) The definition of `delivery' in section 7-1-201 (14) applies to this section and sections 13A-9-13.2 and 13A-9-3.3. (Acts 1980, No. 80-200, p. 279, § 1.)"
The Alabama "bad check" statutes have been frequently revised to conform to the contemporary pattern of such laws. The present statute, § 13A-9-13.1 through § 13A-9-13.3
(1980 Ala. Acts 279, No. 80-200, April 15, 1980), replaced § 13A-9-13
(1977 Ala. Acts 866, No. 607, May 16, 1977). Section 13A-9-13, supra, replaced § 13-4-110 through § 13-4-122, Code of Alabama 1975 (1971 Ala. Acts 3958, No. 2479, October 1, 1971).
The present statute, like its predecessors, covers issuing checks or negotiable instruments without sufficient funds or on non-existent accounts. In order for a person to be convicted of a violation of § 13A-9-13.1, supra, it must be proven that the person negotiated or delivered a negotiable instrument in return for a thing of value with the intent, knowledge, or expectation that the negotiable instrument would not be honored by the drawee. It is undisputed that Mrs. Huguley delivered to the Company three checks which were negotiable instruments and in return received valuable merchandise. It is undisputed that the checks were dishonored by the drawee and returned to the Company because of insufficient funds. However, in order to support a conviction there must be evidence of intent, knowledge, or expectation that the checks would not be honored by the bank.
Section 13A-9-13.1 (b)(2), supra, provides that it is prima facie evidence that the maker or drawer intended, knew, or expected that the instrument would not be honored if payment is refused by the drawee bank for lack of funds, upon presentation within thirty days after delivery, and the maker or drawer shall not have paid the holder thereof the amount due thereon, together with a service charge of not more than $10.00, within ten days after receiving written notice from the holder of the instrument that payment was refused upon such instrument, as provided in § 13A-9-13.2, supra.
Section 13A-9-13.2, supra, prescribes the notice requirements as follows:
"For purposes of section 13A-9-13.1:
 "(1) Notice mailed by certified or registered mail, evidenced by return receipt, to the address printed on the instrument or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the person making, drawing, uttering or delivering said instrument.
 "(2) The form of notice shall be substantially as follows:
 `This statutory notice is provided pursuant to section 13A-9-13.2 of the Alabama Code. You are hereby notified that a check or instrument numbered . . . ., apparently issued by you on . . . . (date), drawn upon . . . . (name of bank), and payable to . . . ., has been dishonored. Pursuant to Alabama law, you have 10 days from receipt of this notice to tender payment of the full amount of such check or instrument plus a service charge of not more than $10.00, the total amount due being $. . . . Unless this amount is paid in full within the specified time above, the holder of such check or instrument may assume that you delivered the instrument with intent to defraud and may turn over the dishonored instrument and all other available information relating to this incident to the proper authorities for criminal prosecution.'
 "(3) Any party holding a worthless negotiable instrument and giving notice in substantially similar form to that provided in subdivision (2) of this section shall be immune from civil or criminal liability for the giving of such notice and for proceeding under the forms of such notice. (Acts 1980, No. 80-200, p. 279, § 2.)"
In the instant case the record reflects that the holder of the checks, the Company, presented them to the drawee *Page 883 
bank within thirty days after delivery, and payment was refused by the drawee for lack of funds. The Company then in accordance with § 13A-9-13.2, gave written notice to Mrs. Huguley advising her that the checks had been dishonored. The record shows that the letter was delivered to the address printed on the checks, which was the address of Mrs. Huguley's business, and apparently receipted for by Mrs. Huguley's daughter. The notice given by the Company to Mrs. Huguley met the requirements of the statute. The letter was delivered September 10, 1983, and Mrs. Huguley did not pay the Company the amount due, together with a service charge, within the required ten days after notice. Thus, the refusal of the drawee to honor the checks because of insufficient funds, and the failure of Mrs. Huguley to make them good within ten days after proper notice, is prima facie evidence that Mrs. Huguley intended, knew, or expected that the checks would not be honored by the Robertson Banking Company at the time she negotiated or delivered them to the Company.
Mrs. Huguley claims that she did not personally receive the letter of notice and never learned of it. The statute does not require the letter to be delivered personally to the maker of the instrument, but only that it be mailed to the address printed on the check. Even if delivery of the letter were refused, it would still constitute proper notice under the statute, Ala. Code § 13A-9-13.1 (b)(3) (1975).
Mrs. Huguley contends that she made arrangements to make the checks good, and that she paid the full amount due together with a $10.00 service charge on each check on October 17, 1983. The record shows that Mr. Lugar and Mrs. Huguley discussed a plan for payment on September 20, 1983, but no payments were made by Mrs. Huguley in accordance with the discussion. The evidence is in dispute as to the date Mrs. Huguley paid the full amount owed on the checks. She claims she made the payment by mail and received a receipt dated October 17, 1983. Mr. Lugar claims that she came to Birmingham and made the payment on October 19, 1983. Regardless of which date she made the checks good, the criminal offense had already been committed. Later payment does not destroy any criminality that may have existed if the checks were delivered with intent, knowledge, or expectation that they would not be honored by the drawee. Even though the parties may reach a satisfactory settlement of the transaction, the State has an interest which cannot be compromised or settled without its consent. The subsequent settlement between Mrs. Huguley and the Company will not stay the prosecution or prevent the enforcement of the penalty.
We think that the offense is complete when the negotiable instrument is delivered for a thing of value with the intent, knowledge, or expectation that it will not be honored by the drawee. Proving such intent, knowledge, or expectation by the prosecution may be difficult. The prosecutor usually has available two methods of doing so. First, he may always prove the requisite intent by direct or circumstantial evidence. In addition, most insufficient funds statutes contain a section for prima facie proof of intent to defraud. Section 13A-9-13.1
(b), supra, is such a provision. It is a legislatively created aid to the prosecution in proving the requisite elements of intent to defraud; or knowledge or expectation on the part of the drawer, either that there were or might be at presentment insufficient funds to cover the check; or that the drawer had knowledge at the time of the drawing of the check that the drawer had no account in the drawee bank. Tolbert v. State,294 Ala. 738, 321 So.2d 227 (1975). A showing at the trial that the negotiable instrument had been presented within thirty days after delivery, payment had been refused by the drawee for lack of funds, and the maker or drawer shall not have paid the holder the amount due thereon, together with a service charge of not more than $10.00, within ten days after receiving written notice, in accordance with the statute, from the holder *Page 884 
that payment was refused, is prima facie evidence of the drawer's intent to defraud with knowledge of such deficiency.
The undisputed evidence made out a prima facie case against Mrs. Huguley. She was free to testify and did testify to her intent and mental process to rebut any presumption arising from the prima facie section of the statute. Tolbert v. State, supra; Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974). The weight to be given her testimony would rest with the trial judge to determine whether her testimony is true or false and to accord it such weight or probative force as in his judgment it is entitled to.
The rule is that a judgment of conviction by a court trying a case without a jury must be affirmed where this court could not say that the conclusion reached by the trial court was clearly wrong or so contrary to the weight of the evidence as to be manifestly unjust. Haney v. State, 33 Ala. App. 524,36 So.2d 116 (1948); Edmondson v. State, 30 Ala. App. 433, 7 So.2d 508
(1942). The weight and sufficiency of the evidence and the credibility of the witnesses are for the determination of the court below, and if there is evidence to support the judgment it will not be disturbed. Haney v. State, supra; Edmondson v.State, supra; 22 C.J.S. Criminal Law § 401 (5) (1961).
The facts as disclosed by the record in this case were ample in our opinion to warrant the trial judge's finding Mrs. Huguley guilty, and to sustain the judgment of conviction pronounced and entered. The trial judge having concluded the issue against Mrs. Huguley, and this court not being clearly convinced that to allow the conviction to stand would be manifestly wrong or unjust, the judgment of the trial court should not be disturbed.
It follows that the judgments of conviction from which this appeal is taken must be, and they hereby are, affirmed.
AFFIRMED. *Page 1047