[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 673 
James W. Steeley, Jr., was charged with issuing a worthless instrument, in violation of § 13A-9-13.1, Code of Alabama 1975. The case was originally tried in the Gadsden Municipal Court and, there, the appellant was found "guilty as charged." The appellant was fined $100 plus costs and ordered to make restitution in the amount of $290.73. The appellant then appealed the case to the Circuit Court of Etowah County, where he was found "guilty as charged" by a jury. The trial judge imposed the same sentence that had been imposed by the Municipal Court judge. The appellant was represented by counsel at trial but appears pro se on this appeal.
Terry Lane testified that he is the security manager for South Central Bell in Gadsden, Alabama. In late 1983, South Central Bell had an account in the name of Vincent Joseph (the appellant's cousin), doing business as Classic Automobiles in Ohatchee.
Lane testified to the following sequence of events:
December 19, 1983 — An order to discontinue service to Joseph's account was issued. Joseph's telephone was scheduled to be disconnected unless payment was made in the amount of $280.73 for his November 1983 telephone bill.
December 28, 1983 — The appellant delivered a check dated December 27, 1983 to South Central Bell for $280.73 as payment for Joseph's telephone bill. Joseph's phone service was not interrupted.
January 19, 1984 — The appellant's check was returned for insufficient funds.
January 24, 1984 — Service was suspended to Joseph's account. Additional charges had accrued on Joseph's account from the November bill until his phone service was disconnected.
February 1, 1984 — Statutory notice of dishonor sent to the appellant from South Central Bell.
February 6, 1984 — Notice received and signed for by the appellant.
February 21, 1984 — Case turned over to Lane in Security Department.
March 23, 1984 — Lane and a fellow employee went to the appellant's place of business to discuss the returned check with him. The appellant assured Lane that he would take care of the check within seven days.
April 9, 1984 — Lane contacted the appellant again when payment on the returned check was not made. The appellant told Lane he would pay the check the next week. *Page 674 
April 18, 1984 — Lane again contacted the appellant on this check. The appellant said he would pay the check the next day.
June 21, 1984 — Warrant was issued for the appellant's arrest in connection with this check. No payment had been made on the check prior to this point.
August 10, 1985 — The appellant was arrested on this charge.
Lane testified that, once an account is turned over to the security department, no one else can accept payment on that account. If someone attempts to make payment, that person is referred to the security department. If payment is received by mail, security is notified. Lane stated that the appellant never paid or offered to pay the check until the day of his trial. At that time, defense counsel tendered $280.73 plus $10 in service charges. Lane refused the tender.
Michael McGowan testified that he is employed by Etowah Steelworkers Federal Credit Union. He stated that the check in question was drawn on the account of Jim Steeley and James C. Dean. On December 27, 1983, when the appellant wrote the check to South Central Bell, his account was overdrawn approximately $2500.00. McGowan testified that an account should never go into negative figures. However, the bank did provide overdraft protection to an account up to $500.00 in increments of $50.00.
McGowan stated that the appellant had a negative balance in his account from mid-October 1983, until December 30, 1983, when the account was closed. During this period, the appellant had numerous checks returned and he was charged a service charge on each check.
Although the appellant's overdraft loan account should have been closed when his checking account was closed, it remained open until January 9, 1984. When the appellant's check was presented for payment on January 3, 1984, there were insufficient funds in his overdraft loan account to cover the check. The appellant was notified of this fact.
The appellant testified that he gave the check in question to South Central Bell as payment for his cousin's phone bill. The appellant told the teller that he thought he had enough money in his overdraft loan account to cover the check but, if the check "bounced," she should run it through again. He stated he had $2500 worth of overdraft protection. The appellant thought his cousin's phone was to be disconnected when he paid the bill.
On February 6, 1984, the appellant received notice from South Central Bell that his check had bounced. The appellant stated he then went to the South Central Bell office and gave the money for the check to a teller. The teller told the appellant that she couldn't accept his money because the matter had been referred to security. The appellant then left.
In March, Lane came to see the appellant at his office. Lane told him that he had the returned check. The appellant then attempted to give Lane $280.73 plus the $10.00 service charge but Lane would not accept it. Lane told the appellant that he could not just pay the check off, but he had to pay the entire balance of his cousin's phone bill which was approximately $600.
On rebuttal, Paul McAlister testified that he went with Terry Lane to the appellant's place of business in March, 1984. He stated that the appellant never offered any money to Lane to pay the check.
Lane stated that he never told the appellant he had to pay the entire balance of his cousin's phone bill.
 I
The appellant contends he is entitled to a new trial because he was never arraigned in circuit court. The appellant proceeded to trial in circuit court on this charge and never objected to his lack of arraignment in circuit court. Thus, he waived arraignment by his silence in this regard. See Steeleyv. State, 533 So.2d 665 (Ala.Crim.App. 1988); Marsden v.State, 475 So.2d 588 (Ala. 1984); Bush v. City of Troy,474 So.2d 164 (Ala.Crim.App. 1984); aff'd, 474 So.2d 168 (Ala. 1985); Harpper *Page 675 v. City of Troy, 467 So.2d 269 (Ala.Crim.App. 1985).
 II
The jury venire list in this case contained an odd number of jurors. Since the City had the first strike, it had one more strike than did this appellant. The appellant contends he was denied due process of law because he had one less strike than did the City.
In Brooks v. State, 471 So.2d 507 (Ala.Crim.App. 1984),cert. quashed, 471 So.2d 507 (Ala. 1985), this court held that there is no requirement that each side have an equal number of strikes. A defendant is not prejudiced by the fact that the prosecutor has an additional strike due to an odd number of jurors on the venire list. Brooks, supra.
Furthermore, there is no evidence in the record that the appellant ever objected to the jury panel prior to trial. Thus, this issue is also not before this court on appeal.
 III
During the cross-examination of the appellant, the prosecutor questioned this appellant about several statements which he made during his testimony in municipal court which were inconsistent with his testimony at this trial in circuit court. The appellant argues this denied him the right to a trial de novo. We disagree.
"The testimony of a witness may be impeached by presenting proof showing that he has made statements inconsistent with or contradictory of his testimony." Allen v. State, 390 So.2d 676
(Ala.Crim.App. 1980) (citation omitted). See also Ledbetterv. State, 27 Ala. App. 395, 173 So. 647, cert. denied, 234 Ala. 74,173 So. 648 (1937) (court held that it was permissible to impeach a witness by showing his testimony in circuit court was inconsistent with his testimony in county court). We therefore find no error here.
 IV
The appellant argues the City of Gadsden failed to present a prima facie case because it did not plead and prove the City ordinance under which the appellant was prosecuted. The record does not substantiate or support this argument.
The affidavit and warrant of arrest in this case cite Section 17-1 of the Code of Ordinances of the City of Gadsden, Alabama. The complaint to circuit court in this case also cites this ordinance. Section 17-1 of the Code of Ordinances of the City of Gadsden was admitted into evidence without objection (R. 66) as City's Exhibit # 6 (R. 364). This issue is therefore without merit. See Hosmer v. City of Mountain Brook, 507 So.2d 1038
(Ala.Crim.App.), cert. denied, 507 So.2d 1038 (Ala. 1987).
 V
The appellant contends the trial court should have imposed sanctions on the prosecutor because he obtained and withheld exculpatory evidence. The evidence to which the appellant refers consists of documents which had been introduced by thisappellant in municipal court. When the appeal was taken to circuit court, the appellant did not pick up these documents and the City court clerk sent them to the City prosecutor "to get them out of her way." (R. 257). Both the appellant and the prosecutor had copies of these documents. The prosecutor gave these documents back to defense counsel when he requested them at trial. We, therefore, find no evidence of prosecutorial misconduct from these facts. No error is shown.
 VI
The appellant contends the trial judge erred by excluding defense exhibits # 5 and # 6 from evidence. No exception was taken to the trial court's exclusion of these exhibits. Furthermore, defense counsel failed to make an offer of proof as to why these exhibits should have been admitted into evidence. Thus, this issue was not preserved for our review.See Freeman v. State, 453 So.2d 776 (Ala.Crim.App. 1984);Gwin v. State, 425 So.2d 500 *Page 676 
(Ala.Crim.App. 1982), writ quashed, 425 So.2d 510 (Ala. 1983).
 VII
The appellant argues the trial judge erred by giving two of the City's written requested instructions and by failing to give fourteen of his written requested jury instructions. Although defense counsel objected to the trial court's ruling on these requested charges, he did not state the grounds of his objections. Thus, no error appears here. See Rule 14, A.R.Crim.P. (Temp.), Allen v. State, 414 So.2d 989
(Ala.Crim.App. 1981), affirmed, 414 So.2d 993 (Ala. 1982).
 VIII
The appellant asserts that the complaint to circuit court in this case is invalid because it cites § 13A-9-13, Code of Alabama 1975, rather than § 13A-9-13.1, Code of Alabama 1975. We disagree.
The warrant of arrest and affidavit in this case correctly cite § 13A-9-13.1 and the warrant of arrest and affidavits and the complaint to circuit court describe the offense designated in § 13A-9-13.1. It is not necessary to set out the statute citation with which the accused is charged as long as the language contained in the warrant and complaint sufficiently apprise the accused of which offense he has been charged. Cityof Dothan v. Holloway, 501 So.2d 1175 (Ala.Crim.App. 1986). The original warrant of arrest and affidavit and the complaint to circuit court in this case contain language which gave the appellant sufficient knowledge of the offense with which he was charged.
 IX
The appellant asserts that he was not allowed to testify as to his intent in this case. The record does not support this assertion. The appellant was specifically asked if he intended to write a bad check and the appellant answered that he did not. Thus, there is no error here. Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (Ala. 1974).
 X
The appellant asserts the verdict in this case was contrary to the evidence on several grounds.
 A
First, the appellant asserts that there was no evidence that the check was written for a "thing of value." Section13A-9-13.1(a), Code of Alabama 1975 provides that, "a person commits the crime of negotiating a worthless instrument if he negotiates or delivers a negotiable instrument for a thing ofvalue and with the intent, knowledge or expectation that it will not be honored by the drawer." (emphasis added).
Without dispute, the appellant gave South Central Bell the check as payment for his cousin's telephone bill. He states that he did not benefit by paying his cousin's phone bill and thus, the check was not written for a "thing of value."
There is no requirement in the statute that the issuer of a worthless check must himself benefit from the "thing of value" for which the check is written. All that is required is that the check is written for a thing of value, knowing, intending or expecting that the check will not be honored.
At the time the appellant wrote the check to South Central Bell, his cousin's phone bill was delinquent and his service was to be discontinued for non-payment. When South Central Bell received this appellant's check, it continued the cousin's telephone service until the appellant's check "bounced." Thus, the "thing of value" was the cousin's previous phone service as well as the continuation of this service once the check was issued to South Central Bell by the appellant. Therefore, there was proof that the check in question was written for a "thing of value."
 B
The appellant contends that the City failed to establish a prima facie case. "In order for a person to be convicted of § 13A-9-13.1, supra, it must be proven *Page 677 
that the person negotiated or delivered a negotiable instrument in return for a thing of value with the intent, knowledge or expectation that the negotiable instrument would not be honored by the drawee." Huguley v. City of Demopolis, 456 So.2d 879,882 (Ala.Crim.App. 1984).
The City presented evidence that this appellant delivered a negotiable instrument (i.e. the check) to South Central Bell in return for a thing of value (i.e., his cousin's telephone service). There was also evidence that the check was dishonored by the drawee and returned to South Central Bell due to insufficient funds in appellant's bank account.
 ". . . However, in order to support a conviction there must be evidence of intent, knowledge, or expectation that the checks would not be honored by the bank.
 "Section 13A-9-13.1(b)(2), supra, provides that it is prima facie evidence that the maker or drawer intended, knew, or expected that the instrument would not be honored if payment is refused by the drawee bank for lack of funds, upon presentation within thirty days after delivery, and the maker or drawer shall not have paid the holder thereof the amount due thereon, together with a service charge of not more than $10.00, within ten days after receiving written notice from the holder of the instrument that payment was refused upon such instrument, as provided in § 13A-9-13.2, supra."
Huguley, 456 So.2d at 882.
The City presented evidence that South Central Bell presented the appellant's check to the drawee within thirty days of delivery and payment was refused due to lack of funds in this appellant's account. South Central Bell then gave notice to the appellant that the check had been dishonored in compliance with § 13A-9-13.2, Code of Alabama 1975.[1] The record shows that the notice of dishonor was delivered to the address printed on the appellant's check and that he received this notice. South Central Bell was not paid the amount of the check, plus a service charge, within ten days of the appellant's receipt of the notice. Thus, the refusal of the drawee to honor the check because of "insufficient funds" and the failure of the appellant to pay the amount of the check to South Central Bell within ten days after proper notice are prima facie evidence that the appellant intended, knew or expected that his check would not be honored when he delivered the check to South Central Bell.
Furthermore, the City also presented non-statutory prima facie evidence of intent, knowledge or expectation that the check would not be honored. The record establishes that, at the time the appellant negotiated the check, his account was overdrawn in the amount of $2500 at his bank. Numerous checks had been dishonored on that account previously because of "insufficient funds" and the appellant had notice of this fact. The appellant's account was closed on December 30, 1983, and he had notice of this fact. The check in question did not clear on January 3, 1984, because his overdraft loan account did not have sufficient funds to cover this check. The overdraft loan account should have been closed at the same time that his regular checking account was closed. The appellant never offered payment on this check until after his arrest for this offense. Thus, a prima facie case of issuing a worthless check was established by the City's evidence.
 C
The appellant contends there were sufficient funds in his overdraft loan account to cover the check when it was presented for payment. Michael McGowan testified that, when the appellant delivered the check to South Central Bell, his account was overdrawn for amounts in excess of his overdraft *Page 678 
loan amount protection. At the time the check was presented for payment, there were some funds in the overdraft loan account but they were insufficient to cover the check in question. There is no merit to this argument.
 D
The appellant states that "there was no testimony to dispute defendant's testimony that he had tendered the money to complainant's employees on two occasions." This is incorrect. Lane and another South Central Bell employee, Paul McAlister, denied the appellant ever attempted to tender the amount of the check prior to the time of his arrest.
The only evidence that the appellant attempted to pay the check (prior to his arrest) came from the appellant himself. His testimony on this matter was an issue for the jury to determine. Thus, we find no merit to this argument.
 XI
The appellant contends that the delay between the issuance of the warrant of arrest and his arrest upon same denied him his right to a speedy trial under the United States Constitution.
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Constitution Amend. VI. "Prearrest delay may give rise to a due process claim, but only delay following formal accusation or delay subsequent to arrest are considered in evaluating a claim under the U.S.Sixth Amendment speedy trial clause." Serna v. Superior Court(People), 40 Cal.3d 239, 219 Cal.Rptr. 420, 707 P.2d 793, 806
(1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1493,89 L.Ed.2d 894 (1986).
 "The protection of the Sixth Amendment is triggered when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). '[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.' Id. at 320, 92 S.Ct. at 463."
Hayes v. State, 487 So.2d 987, 991 (Ala.Crim.App.), cert.denied, 487 So.2d 987 (Ala. 1986).
Thus, we must determine if the appellant's speedy trial right was activated in this instance. As stated above, this occurs upon an arrest or the filing of a formal charge. The specific question before us is whether the warrant of arrest in this case constitutes a formal charge.
The only case in Alabama which specifically addresses this issue is Watson v. State, 389 So.2d 961 (Ala.Crim.App. 1980). In Watson, this court held that the issuance of a warrant of arrest does not activate an accused's speedy trial right. Upon our reconsideration of our decision in Watson, we now adopt the reasoning as stated in the dissenting opinion in Watson. In his dissent, Judge Bowen stated that the speedy trial right is triggered by the issuance of a warrant of arrest, because this is when the prosecution is commenced under § 15-3-7, Code of Alabama 1975. We now agree with this view.
A warrant of arrest, as defined by § 15-7-4(a), Code of Alabama 1975, is a written order by a judge or magistrate directed to a peace officer commanding him to arrest the person named in the warrant. The warrant must state the substance of the complaint. Ala. Code, § 15-7-4(a) (1975). The complaint is an allegation made before a judge or magistrate that a person has committed a designated public offense. Ala. Code, § 15-7-1
(1975). See also Rule 15(c) A.R.Crim.P. (Temp.).
Once such a complaint is made to a judge or magistrate, the judge must examine the complainant under oath and take his or her deposition in writing. Ala. Code § 15-7-2(a) (1975). If the judge is reasonably satisfied that the offense alleged in the complaint has been committed by the accused, he must issue a warrant of arrest. Ala. Code, § 15-7-3 (1975). Then, the warrant *Page 679 
of arrest is executed when the appellant is arrested.
The Maryland Court of Appeals has considered the same question which is now before this court in State v. Gee,298 Md. 565, 471 A.2d 712 (1984), cert. denied, 467 U.S. 1244,104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). In Gee, the court stated:
 "We think that the document consisting of a warrant of arrest and statement of charges on which the warrant is based[2] (warrant-statement of charges) is a 'formal charge' in the contemplation of the speedy trial right when a defendant is subject to be tried on that document. In that event the criminal prosecution has truly commenced and the putative defendant has become an 'accused.' The State has committed itself to prosecute and the adverse positions of the State and defendant have solidified. 'It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' Kirby v. Illinois, 406 U.S. [682] at 689, 92 S.Ct. [1877] at 1882 [32 L.Ed.2d 411 (1972)]. A warrant-statement of charges on which a defendant can be tried is tantamount to an indictment or an information. Therefore, its mere issuance marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. Id. at 690, 92 S.Ct. at 1882."
Gee, 471 A.2d at 716.
There is no doubt that an accused can be and is tried in Municipal Courts and District Courts in Alabama on the document consisting of the warrant of arrest and the complaint or affidavit (as in this case) when the offense charged is within the jurisdiction of such courts. See City of Dothan v.Holloway, 501 So.2d 1136 (Ala. 1986); Woodham v. State,28 Ala. App. 62, 178 So. 464 (1938); Cross v. State, 117 Ala. 73,23 So. 784 (1897); Wiley v. State, 117 Ala. 158, 23 So. 690
(1897). The complaint or affidavit is the formal accusation which apprises the accused of the nature and cause of the prosecution. See Jefferson v. City of Birmingham, 399 So.2d 932
(Ala.Crim.App. 1981); Robinson v. City of Sylacauga,37 Ala. App. 565, 72 So.2d 125 (1954); Smith v. State, 25 Ala. App. 405,148 So. 858 (1933); McKinstry v. City of Tuscaloosa,172 Ala. 344, 54 So. 629 (1910). It is the point at which the prosecution begins. See Rule 15(c), A.R.Crim.P. (Temp.).
Thus, the document consisting of the affidavit and the warrant of arrest in this case was a "formal charge" which triggered the appellant's speedy trial right, since the defendant was subject to be, and was in fact, tried under that document.
Next we must determine if the appellant's right to a speedy trial was violated in this case.
 "Thus, an 'inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. . . .' Id. [Barker v. Wingo, 407 U.S. 514] at 522, 92 S.Ct. [2182] at 2188 [33 L.Ed.2d 101 (1972)]. In adopting 'a balancing test, in which the conduct of both the prosecution and the defendant are weighed,' id. at 530, 92 S.Ct. at 2192, the Barker
Court identified 'some of the factors' which courts should assess in determining whether a particular defendant has been denied his right to a speedy trial: (a) length of delay; (b) the reasons for the delay; (c) the defendant's assertion of his right; and (d) prejudice to the defendant. Id."
Hayes, 487 So.2d at 991.
A. Length of delay — The length of delay between the issuance of the warrant of arrest and the appellant's arrest[3]
was almost fourteen months. *Page 680 
In Serna, the California Supreme Court considered whether a four-and-a-half-year delay between the filing of a misdemeanor complaint and the appellant's arrest triggered the appellant's speedy trial right. In that case, the court held that a delay between the filing of a complaint and the defendant's arrest, which exceeds the one-year period of limitations generally applicable to misdemeanors, was unreasonable and presumptively prejudicial within the contemplation of the speedy trial guarantee. The court stated that the statute of limitations should be "the touchstone for measuring the reasonableness of a delay between complaint and arrest" because the statute of limitations "reflect a legislative construction of the speedy trial guarantee." Serna, 219 Cal.Rptr. at 429, 428,707 P.2d at 802, 801.
 "If a delay of one year in charging a misdemeanor defendant is so unreasonable that prosecution is statutorily barred, it follows that a delay of similar duration must be considered unreasonable and presumptively prejudicial within the contemplation of the Sixth Amendment when, although a complaint has been filed, the defendant is not arrested and arraigned on the complaint for that period."
Serna, 219 Cal.Rptr. at 429, 707 P.2d at 802.
We must agree with the reasoning of the California Supreme Court. Here, the delay between the warrant and the appellant's arrest exceeded the one-year statute of limitations by almost two months. If the warrant of arrest in this case had not been issued, the appellant's prosecution would have been barred by the statute of limitations. Although the delay beyond the statute of limitations in this case was not considerable, we must consider it presumptively prejudicial.
B. Reasons for the Delay.
 "The prosecution bears the burden of justifying the delay. Barker, 407 U.S. at 531, 92 S.Ct. at 2192.
 "Delays have been categorized as follows: a deliberate delay by the government, a negligent delay and a justified delay. Id. For a discussion of these reasons and examples of each kind, see United States v. Avalos, 541 F.2d 1100, 1111-14
(5th Cir. 1976), cert. denied, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); United States v. Castellana, 461 F. Supp. 233, 238-39 (M.D.Fla. 1978). Each kind of delay is weighted differently:
 " 'A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason . . . should serve to justify appropriate delay.'
 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted)."
Hayes, 487 So.2d at 992.
At the hearing on the motion to dismiss in this case, Hugh Cox testified that he was on the warrant detail for the Gadsden Police Department in 1984. He stated that the address he had for the appellant was Honeysuckle Road in Southside. A few days after the warrant was issued, Cox contacted the Southside Police Department to find out the location of the appellant's home. Cox also received information that the appellant owned a business in downtown Gadsden. Cox then called this business and talked to someone who identified himself as this appellant. Cox told the person about the existence of the warrant and this person told Cox that he would be out of town for a few days but he would come to the police station when he returned. When this period passed, Cox contacted the appellant's wife by telephone and in person. She told Cox that the appellant had gone out of town again. Cox tried several more times to contact this appellant at his home. On one of these occasions, he was told by the appellant's neighbor that the appellant was in and out all the time. The next two nights, Cox waited on the road on which the appellant lived but the appellant never showed up. All of these *Page 681 
events occurred within several weeks of the issuance of the warrant at issue.
Cox then sent numerous letters to the appellant's address. He received no response from the appellant and none of the letters was returned. Cox went to the appellant's place of business to serve the warrant but was told the appellant had gone out of business. Cox also contacted the Southside Police Department, which had a felony warrant for the appellant, and asked them to hold the appellant for the Gadsden Police Department if they picked up the appellant. Cox could not testify as to what steps were taken to execute the warrant in 1985 because he was no longer on the warrant detail.
In the case at bar, we feel like the delay, at least in 1984, was a justified delay. Cox testified that, although he knew where to find the appellant, the appellant was never there on the numerous occasions when he tried to serve the warrant. Cox's testimony reveals that the Gadsden Police Department made a diligent, good-faith effort to execute the warrant in 1984. Thus, the City met its burden of justifying at least six months of the delay in this case.
Furthermore, Cox's testimony illustrates that the appellant must bear some of the responsibility for the delay. Cox stated that the appellant knew of the existence of the warrant and knew that the police had attempted to serve it on him several times and he always managed to be gone at these times. The appellant never responded to Cox's requests for him to come to the station and pick up the warrant. Although the appellant denies these facts, we find that the City of Gadsden met its burden in this regard.
C. The Appellant's Assertion of his Right. From the record, it does not appear that the appellant asserted this right until June 10, 1986, after his appeal had been taken to circuit court. Although we can find no case on point, this factor does not appear to be as relevant when assessing a speedy trial claim concerning delay between complaint and arrest as it does when assessing a speedy trial claim concerning delay between arrest or formal charge and trial itself. This is because a person could not assert this right if he did not know about the charge until his arrest.
The only significance we can attach to this factor is that it appears to us that the appellant could have asserted this right earlier in this proceeding than he did. He could have asserted it some time between his arrest and his trial in Municipal Court. The record does not indicate that it was raised. Therefore, if this factor favors either side, it would favor the prosecution in this cause.
D. Prejudice to the Appellant. "As a general rule, an unreasonable delay in making an arrest after the issuance of a warrant will require dismissal of the charges against the defendant when the defendant has been prejudiced." State v.Horton, 373 So.2d 1093, 1095 (Ala.Civ.App.), aff'd,373 So.2d 1096 (Ala. 1979). The defendant must show that his ability to conduct his defense was prejudiced. Horton.
The only allegation of prejudice in this case is that the appellant lost the name of a witness. This particular witness would have testified that she was present at the appellant's home when the appellant tendered money to Lane just before or right after[4] this appellant's arrest. If this alleged event took place before the appellant's arrest, the appellant would not be prejudiced because his tender would not affect his liability for this criminal offense. The appellant testified during his trial that he offered to tender money to Lane on several occasions. Thus, this unavailable witness's testimony would be merely cumulative. Furthermore, the appellant is certainly not prejudiced if this alleged event took place after his arrest because the supposed prejudice occurred after the delay of which the appellant now complains.
We must also note that the appellant testified thathe himself lost the piece of paper on which this alleged witness's name was written. He does not testify whether *Page 682 
he lost it before or after his arrest. The appellant has thus failed to establish "prejudice" in this regard.
We have carefully considered the factors set out above and find that they are weighted in the prosecution's favor. Thus, we conclude there was not a violation of the appellant's speedy trial right due to the delay between the issuance of the warrant and his arrest in this cause.
 XII
This issue is discussed in Issue X(D).
 XIII A
The appellant contends, citing § 7-3-604(2), Code of Alabama 1975 (Uniform Commercial Code) that "[t]he holder's [South Central Bell] refusal of such [the appellant's] tender wholly discharges any party who has a right of recourse against the party making the tender." (Appellant's brief, p. 16). Whether vel non South Central Bell can collect its money on a dishonored check by proceedings in civil court is not a proper subject for this court to address. The refusal of South Central Bell to accept the appellant's tender at trial does not destroy the legitimacy of this prosecution under § 13A-9-13.1, Code of Alabama 1975. Furthermore, "the UCC does not apply to a proceeding under § 13A-9-13.1 unless otherwise noted in this statute." Steeley.
 B
The appellant contends that he was prosecuted under §13A-9-13.1 to collect a debt which is an unconstitutional application of the statute. Terry Lane testified that, although South Central Bell initially wanted to collect its funds on this check when the warrant of arrest was made, they gave up on collecting the debt and wanted "justice served." (R. 109). Thus, under these facts, it is clear that the appellant was prosecuted because he violated § 13A-9-13.1, Code of Alabama 1975, and not for the purpose of collecting a civil debt. Section 13A-9-13.1, was not unconstitutionally applied in this instance. See Steeley.
 XIV
Prior to trial, the City of Gadsden made a motion in limine to prevent this appellant from making any reference to the facts and circumstances surrounding his arrest. After hearing arguments from both sides, the trial judge granted the City's motion in limine. The appellant contends this was error.
In discussing his decision to grant the Motion in Limine, the trial judge stated:
 "THE COURT: Well, if there is an impropriety or illegality concerned with the arrest, that would raise questions of law, not fact and would not have anything to do with the merits of the trial. If you want to raise something improper or illegal about some arrest, then that is going to be a matter that is going to be taken up in chambers before the judge anyway.
"MR. KING: Yes, sir.
 "THE COURT: Of course, if you offer the officer as a witness, the other side, if it has something to show some bias, I guess would have the right to ask it. If that gets to be an issue or problem in the trial, then we will just take it up in limine in chambers and in camera and you can give me an offer of what you expect to show and then we will determine whether it is something that would be inflammatory and prejudicial and should be allowed in the case. Can we agree to do that?
. . . . .
 "THE COURT: I am going to grant your Motion in Limine. Before you go into any matters of that sort, we are going to have to get in chambers and get into it. I don't want to get in the situation of having to try the case and then declare a mistrial. If you expect to show some conspiracy then —
 "Alleging it isn't sufficient. You are going to have to show the Court that you have got something before I am going to allow it." *Page 683 
(R. 38-40)
 ". . . The trial court has broad discretion in evidentiary matters. See Louisville N.R.R. v. Phillips, 293 Ala. 713, 310 So.2d 194 (1975).
 " 'In keeping with the vesting of broad discretion in the trial court in this area, it is generally held that the granting of a motion in limine can never be reversible error. The nonmoving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter. This offer of proof is required in order to isolate the error for appeal. It is this refusal at trial to accept the proffered evidence, not the granting of the pretrial motion in limine that serves as the basis for reversible error. Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion in limine.'
 "Gamble, The Motion in Limine: "A Pretrial Procedure That Has Come of Age," 33 Ala.L.Rev. 1 (1981).
State v. Askew, 455 So.2d 36, 37 (Ala.Civ.App. 1984).
As can be seen from the quoted portion of the record, the trial judge did not grant a prohibitive-absolute motion in limine. The trial judge never told the appellant that he could not go into the matters which were the subject of the motion in limine in question. He merely told the appellant that he had to bring it to the attention of the court before he attempted to introduce the disputed matters at trial.
If the appellant had attempted to introduce evidence of matters contained within the motion in limine, and if the City objected and the objection was sustained by the trial judge, the appellant could have appealed that ruling. See Ex parteHouston County, 435 So.2d 1268 (Ala. 1983). We find no evidence in the record that the appellant ever attempted to bring up the matters which were the subject of the motion in limine. Thus, there is no basis of error on this issue. See Phillips v.State, 527 So.2d 154 (Ala. 1988).
 XV
The appellant contends that the notice of dishonor sent by South Central Bell was insufficient because it differedslightly from the words contained in § 13A-9-13.2(2), Code of Alabama 1975. This statute provides:
 "The form of notice shall be substantially as follows:
 "This statutory notice is provided pursuant to section 13A-9-13.2 of the Alabama Code. You are hereby notified that a check or instrument numbered __________, apparently issued by you on __________ (date), drawn upon __________, (name of bank), and payable to __________, has been dishonored. Pursuant to Alabama law, you have 10 days from receipt of this notice to tender payment of the full amount of such check or instrument plus a service charge of not more than $10.00, the total amount due being $ _________ Unless this amount is paid in full within the specified time above, the holder of such check or instrument may assume that you delivered the instrument with intent to defraud and may turn over the dishonored instrument and all other available information relating to this incident to the proper authorities for criminal prosecution."
Ala. Code, § 13A-9-13.2(2) (1975) (emphasis added).
We have previously held that § 13A-9-13.2 does not require that the exact language contained in the statute be used. A notice of dishonor is sufficient if it is substantially similar to the language contained in § 13A-9-13.2(2). See Steeley. The notice of dishonor in this case was substantially similar to the wording of § 13A-9-13.2(2). Thus, it was legally sufficient.
 XVI
This issue is discussed and covered in Issue X(B).
 XVII
This issue is covered in Issue X(A). *Page 684 
 XVIII
This issue is discussed and covered in Issue X(C).
 XIX
We find there was no error in the trial court's denial of the appellant's motion to exclude the evidence and motion for a directed verdict. The City presented sufficient evidence at trial from which a jury could reasonably conclude that this appellant was guilty of issuing a worthless check beyond a reasonable doubt. See particularly the discussion under Issue X.
 XX
The appellant asserts that this prosecution was barred by the Statute of Limitations because he was not arrested until some nineteen months after this offense occurred. The offense with which the appellant was charged is a misdemeanor, and thus, his prosecution must have commenced within twelve months after the commission of this offense. See § 15-3-2, Code of Alabama (1975). "A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of awarrant, or by binding over the offender." Ala. Code, § 15-3-7
(1975) (emphasis added).
The offense in this case occurred on December 27, 1983. Although the appellant was not arrested until August 10, 1985, a valid warrant of arrest was issued on June 25, 1984. This date is within the statutory period of twelve months after the commission of this offense.
Commencement of a prosecution begins when the court obtains subject matter jurisdiction notwithstanding the fact that jurisdiction of the person has not been obtained (at that time) by service of the warrant. Bryant v. State, 158 Ala. 26,48 So. 543 (1909). Thus, this prosecution was not barred by the Statute of Limitations.
 XXI
This issue was discussed in Issue XIX.
 XXII
The appellant contends "the trial court erred by failing or refusing to charge the jury that the offense of negotiating a worthless instrument is complete when the negotiable instrument is delivered for a thing of value." (Appellant's brief, p. 18). The appellant did not tender a written requested charge on this matter nor did he orally request the trial judge to instruct the jury on this matter. Therefore, there is nothing before this court to review on this issue. See Rule 14, A.R.Crim.P. (Temp.). Allen v. State, supra.
 XXIII
This issue is covered in Issue XIX.
For the reasons stated above, this cause is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The trial judge in this case seemed to be under the impression that the notice of dishonor did not comply with § 13A-9-13.2
because the words "appropriate legal action" were used instead of the words "criminal prosecution" as used in the statute. In our discussion of Issue XV, we found the notice of dishonor legally sufficient because it contained substantially similar language to § 13A-9-13.2. The only difference is noted in this footnote.
[2] The statement of charges to which the Maryland Appellate Court refers is the same as a complaint or affidavit in this state. In Maryland, the warrant and statement of charges are on one piece of paper with the warrant following the statement of charges. In Alabama, the affidavit or complaint and the warrant of arrest are also contained on one piece of paper with the warrant following the affidavit.
[3] The appellant does not challenge the length of delay between the issuance of the warrant and his trial.
[4] The appellant's own testimony was inconsistent on this point.